# Tressler, Appellant, *v.* Baltimore & Ohio Railroad Company.

*Negligence—Railroads—Grade crossings—" Stop, look and listen "— Question for jury.*

In an action against a railroad company to recover damages for the death of plaintiff's husband, it appeared that at the time of the accident the deceased was driving alone a two-horse wagon, and that upon approaching a grade crossing he stopped, looked and listened at the usual and ordinary place for stopping. The evidence was conflicting as to what occurred afterwards. There were three tracks at the crossing, and a side track upon which cars were standing. The place where the deceased stopped was eight or ten feet lower than the railroad tracks.

There was evidence that if the deceased had stopped at the edge of the track he could have seen 500 feet. The horses had cleared two tracks before the wagon was struck. The evidence tended to show that no whistle was sounded as the train approached the crossing. *Held*, that the case was for the jury and that a verdict and judgment for plaintiff should be sustained.

Argued May 6, 1909. Appeal, No. 73, April T., 1909, by plaintiff, from judgment of C. P. Somerset Co., Feb. T., 1906, No. 187, for defendant non obstante veredicto in case of Catharine Tressler v. Baltimore & Ohio Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before GILLAN, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,500. The court subsequently entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*W. H. Ruppel*, with him *J. C. Lowry*, for appellant, cited: Allen v. Willard, 57 Pa. 374; Lehigh Valley R. R. Co. v. Hall, 61 Pa. 361; Cleveland & Pittsburg R. R. Co. v. Rowan, 66 Pa. 393; Johnson v. R. R. Co., 70 Pa. 357; Penna. R. R. Co. v. Weber, 72 Pa. 27; Weiss v. Penna. R. R. Co., 79 Pa. 387; Penna. R. R. Co. v. Garvey, 108 Pa. 369; Davidson v. Ry. Co., 171 Pa. 522; Cannon v. Traction Co., 194 Pa. 159; Stover v. Penna. R. R. Co., 195 Pa. 616; Muckinhaupt v. R. R. Co., 196 Pa. 213; Elston v. R. R. Co., 196 Pa. 595; Ayers v. Pittsburg, C. C., etc., Ry. Co., 201 Pa. 124; Cromley v. Penna. R. R. Co., 208 Pa. 445; McCurdy v. Traction Co., 15 Pa. Superior Ct. 29; Salathe v. R. R. Co., 28 Pa. Superior Ct. 1; Finefrock v. Traction Co., 33 Pa. Superior Ct. 638; Davis v. R. R. Co., 34 Pa. Superior Ct. 388.

*W. H. Koontz*, with him *J. G. Ogle*, for appellee, cited: Urias v. R. R. Co., 152 Pa. 326; Penna. R. R. Co. v. Beale, 73 Pa. 504;

Moore v. R. R. Co., 108 Pa. 349; Aiken v. R. R. Co., 130 Pa. 380; Ellis v. R. R. Co., 138 Pa. 506; Kraus v. R. R. Co., 139 Pa. 272; Meyers v. R. R. Co., 150 Pa. 386; Whitman v. R. R. Co., 156 Pa. 175; Connerton v. Canal Co., 169 Pa. 339; Ehrisman v. Ry. Co., 150 Pa. 180; Beynon v. R. R. Co., 168 Pa. 642; Holden v. R. R. Co., 169 Pa. 1: Kinter v. R. R. Co., 204 Pa. 497; Mankewicz v. R. R. Co., 214 Pa. 386.

OPINION BY ORLADY, J., July 14, 1909:

The plaintiff's husband was killed by the engine of an express train traveling west on the defendant's road as it crossed the highway near a station at which this train did not stop. The deceased left his home early in the morning and drove to a grist mill near to the station. Having attended to his business there he started to return home. The public highway crosses the railroad, which at that point consists of three tracks, one for east-bound trains, one for west-bound trains, and a side track upon which cars were standing at the time. After a train had passed the decedent started to cross over and his wagon was struck, the horses escaping. A verdict was rendered in favor of the plaintiff, but subsequently the court entered a judgment non obstante veredicto in favor of the defendant.

The case was tried with great fairness. The principal controversy in the case was as to whether or not the west-bound train, which struck him, gave warning of its approach to the highway. It is conceded that the decedent stopped, looked and listened while the train which was standing on the track when he arrived had passed at a place where the highway was eight or ten feet lower than the railroad tracks, and which place was the usual and ordinary place for persons using the highway to make a stop for a view of the tracks in each direction.

The horses had cleared both tracks before the wagon was struck, and even if the driver had stopped at the edge of the track, and found a clear track of 500 feet (the distance he could have seen as testified by the defendant's surveyor), it was for the jury to say whether it was reasonably safe for him to cross, there having been no whistle signal as claimed by the plaintiffs.

The conclusion of the court in entering judgment non ob-

stante veredicto is founded largely on the testimony of two witnesses; the controlling fact seemed to be that the decedent did not leave his team and go forward to look along the track, and did not stop when on the first track. The difficulty with the conclusion lies in an examination of the testimony of these witnesses. One, J. M. Smith, testified that he saw the man drive up to the crossing and get killed by the through express train, and testified as follows: "Q. If Mr. Tressler had stopped and looked along the track, he could have seen No. 47, could he not? A. If he had waited long enough he could, yes, sir. Q. If Mr. Tressler had stopped he could have seen the west-bound train coming? A. He could if he had waited a few minutes longer." The other witness although within view of the accident was at least 1,500 feet distant. It was stated positively by several witnesses called for the plaintiff that no whistle was sounded as the express train approached the crossing, and a number of witnesses for the defendant testified that a signal was given from a tower station some distance away. The accident was in broad daylight and the decedent was familiar with the premises. He was alone in the wagon, driving two horses. The law on this subject has been stated many times, and the duty imposed upon the traveler has been laid down in unmistakable terms. The traveler is not only bound to stop, look and listen before passing on the tracks of the railroad, but is bound to exercise due care and watchfulness until he has crossed it. One who goes in front of a moving train which he had ample opportunity to see and avoid will be conclusively presumed to have been negligent: Ellis v. Penna. R. R. Co., 216 Pa. 415. Where the facts are simple, and the evidence by which they are presented is involved in no uncertainty, their legal value is for the court to determine: Davidson v. R. R. Co., 171 Pa. 522.

It is very difficult to describe the exact condition of affairs at the moment the plaintiff entered upon the first track. He did stop, look and listen and at the place where travelers usually stopped to look and listen. Thus far he did his whole duty. What he saw or should have seen is in doubt under the circumstances. The character of the team he used, the view of the

surrounding objects, the distance he had to cover before reaching the track, the time within which he had to make that passage, the character of the signal given, the speed of the train, and other matters which are necessarily involved in going over a grade crossing, must be considered before we conclude that the traveler was guilty of contributory negligence. To hold that in every instance and without exception a traveler must leave his team standing, however unprotected on the highway and walk ahead of it to look along the track before entering upon it, would be more likely to produce accidents in many instances than to prevent them. The roadway, the conveyance, its load and team and its driver (whether alone or having a person with him to secure the team while he would be away from it), must all be considered. Except in a clear case, the question of negligence, in the light of all the circumstances, together with the credibility of the witnesses who describe them, is wisely intrusted to the jury and not to the court. There has been no departure from the rule that if a driver cannot see by looking from the vehicle in which he is riding, he should get out and go forward to a place where he can see, and there should be no departure from it: Kinter v. R. R. Co., 204 Pa. 497; Mankewicz v. R. R. Co., 214 Pa. 386. But whether a driver who has stopped at the usual place for stopping, from which he has a fair view of the track for a reasonable distance, should go forward in advance of his team to another place to look, is a question to be determined by the circumstances of the particular case. It was stated by the present chief justice in Ely v. Railway, 158 Pa. 233, "Stopping is opposed to the idea of negligence, and unless, notwithstanding the stop, the whole evidence shows negligence so clearly that no other inference can properly be drawn from it, the court cannot draw that inference as a conclusion of law, but must send the case to the jury:" Calhoun v. Penna. R. R. Co., 223 Pa. 298. The rule that one who steps in front of a moving train which he could have seen if he had looked and listened, will be conclusively presumed to have been negligent, applies only to clear cases where no inference except that of negligence is possible from the facts: Sefcik v. Penna. R. R. Co., 223 Pa. 348.

After a careful examination of all the contradictory testimony in the case, and the reasonable inferences to be drawn from these disputed facts, this was a case for the jury and not for the court. The learned trial judge submitted the case in a plain and adequate charge. The plaintiff and defendant each submitted points which were fully answered, and the verdict of the jury was founded upon sufficient evidence. The judgment of the court below is reversed and judgment is now entered in favor of the plaintiff for the amount of the verdict, with interest and costs.